IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

        Plaintiff,                                 Criminal No. 14-0180

   v.                                         ELECTRONICALLY FILED

ELIONARDO JUAREZ-ESCOBAR,

        Defendant.

**MEMORANDUM IN RESPONSE TO THE COURTS ORDER OF NOVEMBER 24, 2014 REGARDING THE EXECUTIVE ACTION TAKEN BY PRESIDENT OBAMA ON NOVEMBER 20, 2014**

**STATEMENT OF MATERIAL FACTS**

    1.    Defendant, Elionardo Juarez-Escobar, is a 42 year old male who is a native and citizen of Honduras. According to the indictment, on or about December 5, 2005, Mr. Juarez-Escobar was deported from the United States. He reentered the United State without a visa or other permission to do so. He was arrested on April 17, 2014 by the New Sewickley police, was further turned over to immigration authorities and the instant indictment ensued. Immigration and Customs Enforcement (USICE) issued an immigration detainer and Mr. Juarez-Escobar is currently detained in the Allegheny County Jail.

    2.    Mr. Juarez-Escobar has pleaded guilty to the crime of Unlawful Reentry, pursuant to 8 U.S.C. 1327. The charges arising out of his arrest, Driving under the Influence, Driving Without a License and Serving Alcohol to a Minor, are still pending in Beaver County, PA.

    3.    On November 20, 2014, the President of the United States announced a number of Executive Actions called "Immigration Accountability Executive Action" (IAEA). These actions cover three broad categories regarding the administration, implementation and

enforcement of the United States immigration law. Attached and marked Exhibit "A" is "Fact Sheet: Immigration Accountability Executive Action" issued by The White House on November 20th.

## DISCUSSION

The first two parts of IAEA focus on Border protection and lawful immigration. They contain broad and potentially important policy changes in areas that are not related to Mr. Juarez-Escobar.

The third area that IAEA addresses is the application of prosecutorial discretion to certain undocumented or out of status immigrants and could relate to Mr. Juarez-Escobar.

The Executive Action grants a form of prosecutorial discretion known as deferred action to certain undocumented immigrants and narrows the focus of USICE's enforcement, especially in regard to Removal of individuals for their violation(s) of the Immigration law.

In the November 20th policy Memorandum entitled: "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children and with Respect to Certain Individuals who are Parents of U.S. Citizens or Permanent Residents", attached hereto as Exhibit "B", Secretary of Department of Homeland Security, Jeh Charles Johnson, writes:

> Deferred action is a form of prosecutorial discretion by which the Secretary deprioritizes an individual's case for humanitarian reasons, administrative convenience, or in the interest of the Department's overall enforcement mission. As an act of prosecutorial discretion, deferred action is legally available so long as it is granted on a case-by-case basis, and it may be terminated at any time at the agency's discretion. Deferred action does not confer any form of legal status in this country, much less citizenship; it simply means that, for a specified period of time, an individual is permitted to be lawfully present in the United States.

> Nor can deferred action itself lead to a green card. Although deferred action is not expressly conferred by statute, the practice is referenced and therefore endorsed by implication in several federal statutes.

Deferred Action is a matter of prosecutorial largess by which qualifying individuals are permitted to stay in the United States, receive employment authorization, social security cards and, in most states, drivers licenses rather than be subject to removal from the United States. USCIS grants or denies, continues or cancels this permission for an undocumented immigrant on a case by case basis.

In June 2012, President Obama issued an Executive Action granting deferred action to certain childhood arrivals to the United States, DACA or Deferred Action for Childhood Arrivals. Grants of DACA relief have been expanded from 2 years to 3 years under IAEA. IAEA extended the eligibility for DACA but at age 42, Mr. Juarez-Escobar does not seem to be eligible for DACA.

The November 20th executive action created an additional avenue of deferred action that will be available for undocumented parents of United States citizen or permanent resident children.  Assuming that Mr. Juarez-Escobar is not the father or step-father of any United States citizen or permanent resident children, this new deferred action would not be applicable to him. If he is the father or step-father of a United States citizen or permanent resident child, this form of deferred action could apply to him.  United States Customs and Immigration Services advise that this form of deferred action will not be available for at least 180 days and is not for every parent of a United States citizen or permanent resident child.

IAEA sets priorities to focus DHS' enforcement resources on the removal of "national security, border security and public safety threats." In the IAEA announcement, the White House

stated: "To better focus on enforcement, Secretary Johnson is issuing a new DHS-wide memorandum that makes clear that the government's enforcement activity should be focused on national security threats, serious convicted criminals, and recent border crossers."

Department of Homeland Security Secretary Johnson in his Memorandum, "Policies for the Apprehension, Detention and Removal of Undocumented Immigrants" on November 20th which is attached and marked as Exhibit "C" states:

> In the immigration context, prosecutorial discretion should apply not only to the decision to issue, serve, file, or cancel a Notice to Appear, but also to a broad range of other discretionary enforcement decisions, including deciding: whom to stop, question, and arrest; whom to detain or release; whether to settle, dismiss, appeal, or join in a motion on a case; and whether to grant deferred action, parole, or a stay of removal instead of pursuing removal in a case. While DHS may exercise prosecutorial discretion at any stage of an enforcement proceeding, it is generally preferable to exercise such discretion as early in the case or proceeding as possible in order to preserve government resources that would otherwise be expended in pursuing enforcement and removal of higher priority cases. Thus, DHS personnel are expected to exercise discretion and pursue these priorities at all stages of the enforcement process-from the earliest investigative stage to enforcing final orders of removal-subject to their chains of command and to the particular responsibilities and authorities applicable to their specific position.

The memorandum discusses priorities for the exercise of discretion when the memorandum becomes effective on January 5, 2015. Mr. Juarez-Escobar may be the beneficiary of prosecutorial discretion because he is not a national security threat, a serious convicted criminal or a recent border crosser.

If Mr. Juarez-Escobar does fall within the grant of prosecutorial discretion, USICE could choose not to pursue his removal or grant him deferred action or another form of relief from removal from the United States.

Prosecutorial discretion is not the only form of relief from removal that could be available to Mr. Juarez-Escobar to prevent his removal from the United States.  He is from Honduras.  USCIS has announced that certain citizens of Honduras living in the United States are eligible to extend their Temporary Protected Status (TPS) so as to protect them from turmoil facing the citizens of that nation.  Mr. Juarez-Escobar is not eligible for TPS extension, but the fact that it has been extended demonstrates a recognition of the potential danger of returning to Honduras.

As this relates to Mr. Juarez-Escobar, his return to Honduras could subject him to the possibility of torture or cause him to have a well-founded fear of persecution on account of his race, religion, nationality, political opinion or membership in a particular social group.  Proof of either could prevent his being removed from the United States.  If he has such a well-founded fear and can prove it to an Immigration Judge, he could be granted asylum (8 USC 1158) or Withholding of Removal (8 USC 1231(b) (3).  If he can prove to an Immigration Judge the likelihood of "torture", as defined,  upon removal to Honduras he could be granted relief from removal pursuant to the Convention Against Torture (8 C.F.R 208.16-18) .

Because of the short timeframe given by this Honorable Court to respond to the Court's Order of November 24, 2014, there has not been an opportunity to fully explore with Mr. Juarez-Escobar what relief from removal may be available to him.

To directly respond to the questions raised by the Court's November 24 Order:

The Executive Action of November 20th sets out priorities for enforcement of the immigration law. The thrust of the Executive Action is to focus removal actions on "felons, not families".  The full breadth of the Executive Action is unknown at this writing as the legality and

constitutionality of the policies are under attack in a recently filed legal challenge. The actions have yet to be implemented or fully described. To the extent that regulatory changes are required, such the regulations have yet to be published. The Executive Action could affect Mr. Juarez-Escobar. The government could decline to seek his removal after the instant criminal matter is resolved or exercise prosecutorial discretion to grant him relief from removal.

The Executive Action is not Congressional action. It directs policy, but does not change the law. The expansive grants of deferred action to parents of United States citizen or permanent resident children and DACA have may raise Constitutional questions, but neither of these forms of prosecutorial discretion seems to apply to Mr. Juarez-Escobar. There are immigration related statutory and Constitutional considerations raised by the Executive Action, but not directly in regard to this criminal matter.

Respectfully submitted,

  /s/ Alonzo Burney, Esq.
Alonzo Burney, Esq.
502 5th Avenue, Suite 301
McKeesport, PA 15132
412 664 7707 (Office)
aburneysr@comcast.net

Robert S. Whitehill, Esq.
Fox Rothschild LLP
625 Liberty Avenue, 29th Floor
Pittsburgh, PA 15222
412 394 5595 (Office)
rwhitehill@foxrothschild.com