Exhibit "B"

*Secretary*
U.S. Department of Homeland Security
Washington, DC 20528



# Homeland Security

November 20, 2014

MEMORANDUM FOR:   León Rodríguez
Director
U.S. Citizenship and Immigration Services

Thomas S. Winkowski
Acting Director
U.S. Immigration and Customs Enforcement

R. Gil Kerlikowske
Commissioner
U.S. Customs and Border Protection

FROM:   Jeh Charles Johnson
Secretary

SUBJECT:   **Exercising Prosecutorial Discretion with Respect to
Individuals Who Came to the United States as
Children and with Respect to Certain Individuals
Who Are the Parents of U.S. Citizens or Permanent
Residents**

This memorandum is intended to reflect new policies for the use of deferred
action. By memorandum dated June 15, 2012, Secretary Napolitano issued guidance
entitled *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to
the United States as Children*. The following supplements and amends that guidance.

The Department of Homeland Security (DHS) and its immigration components are
responsible for enforcing the Nation's immigration laws. Due to limited resources, DHS
and its Components cannot respond to all immigration violations or remove all persons
illegally in the United States. As is true of virtually every other law enforcement agency,
DHS must exercise prosecutorial discretion in the enforcement of the law. Secretary
Napolitano noted two years ago, when she issued her prosecutorial discretion guidance
regarding children, that "[o]ur Nation's immigration laws must be enforced in a strong
and sensible manner. They are not designed to be blindly enforced without consideration
given to the individual circumstances of each case."

1

Deferred action is a long-standing administrative mechanism dating back decades, by which the Secretary of Homeland Security may defer the removal of an undocumented immigrant for a period of time.[1]  A form of administrative relief similar to deferred action, known then as "indefinite voluntary departure," was originally authorized by the Reagan and Bush Administrations to defer the deportations of an estimated 1.5 million undocumented spouses and minor children who did not qualify for legalization under the *Immigration Reform and Control Act* of 1986.  Known as the "Family Fairness" program, the policy was specifically implemented to promote the humane enforcement of the law and ensure family unity.

Deferred action is a form of prosecutorial discretion by which the Secretary deprioritizes an individual's case for humanitarian reasons, administrative convenience, or in the interest of the Department's overall enforcement mission.  As an act of prosecutorial discretion, deferred action is legally available so long as it is granted on a case-by-case basis, and it may be terminated at any time at the agency's discretion. Deferred action does not confer any form of legal status in this country, much less citizenship; it simply means that, for a specified period of time, an individual is permitted to be lawfully present in the United States.  Nor can deferred action itself lead to a green card.  Although deferred action is not expressly conferred by statute, the practice is referenced and therefore endorsed by implication in several federal statutes.[2]

Historically, deferred action has been used on behalf of particular individuals, and on a case-by-case basis, for classes of unlawfully present individuals, such as the spouses and minor children of certain legalized immigrants, widows of U.S. citizens, or victims of trafficking and domestic violence.[3] Most recently, beginning in 2012, Secretary Napolitano issued guidance for case-by-case deferred action with respect to those who came to the United States as children, commonly referred to as "DACA."

---

[1]  Deferred action, in one form or another, dates back to at least the 1960s. "Deferred action" per se dates back at least as far as 1975. *See,* Immigration and Naturalization Service, Operation Instructions § 103.1(a)(1)(ii) (1975).

[2]  INA § 204(a)(1)(D)(i)(II), (IV) *(Violence Against Women Act (VAWA) self-petitioners not in removal proceedings are "eligible for deferred action and employment authorization");* INA § 237(d)(2) *(DHS may grant stay of removal to applicants for T or U visas but that denial of a stay request "shall not preclude the alien from applying for . . . deferred action");* REAL ID Act of 2005 § 202(c)(2)(B)(viii), Pub. L. 109-13 *(requiring states to examine documentary evidence of lawful status for driver's license eligibility purposes, including "approved deferred action status");* National Defense Authorization Act for Fiscal Year 2004 § 1703(c) (d) Pub. L. 108-136 *(spouse, parent or child of certain U.S. citizen who died as a result of honorable service may self-petition for permanent residence and "shall be eligible for deferred action, advance parole, and work authorization").*

[3]  In August 2001, the former Immigration and Naturalization Service issued guidance providing deferred action to individuals who were eligible for the recently created U and T visas. Two years later, USCIS issued subsequent guidance, instructing its officers to use existing mechanisms like deferred action for certain U visa applicants facing potential removal.  More recently, in June 2009, USCIS issued a memorandum providing deferred action to certain surviving spouses of deceased U.S. citizens and their children while Congress considered legislation to allow these individuals to qualify for permanent residence status.

By this memorandum, I am now expanding certain parameters of DACA and issuing guidance for case-by-case use of deferred action for those adults who have been in this country since January 1, 2010, are the parents of U.S. citizens or lawful permanent residents, and who are otherwise not enforcement priorities, as set forth in the November 20, 2014 Policies for the Apprehension, Detention and Removal of Undocumented Immigrants Memorandum.

The reality is that most individuals in the categories set forth below are hard-working people who have become integrated members of American society. Provided they do not commit serious crimes or otherwise become enforcement priorities, these people are extremely unlikely to be deported given this Department's limited enforcement resources—which must continue to be focused on those who represent threats to national security, public safety, and border security. Case-by-case exercises of deferred action for children and long-standing members of American society who are not enforcement priorities are in this Nation's security and economic interests and make common sense, because they encourage these people to come out of the shadows, submit to background checks, pay fees, apply for work authorization (which by separate authority I may grant), and be counted.

## A.    Expanding DACA

DACA provides that those who were under the age of 31 on June 15, 2012, who entered the United States before June 15, 2007 (5 years prior) as children under the age of 16, and who meet specific educational and public safety criteria, are eligible for deferred action on a case-by-case basis. The initial DACA announcement of June 15, 2012 provided deferred action for a period of two years. On June 5, 2014, U.S. Citizenship and Immigration Services (USCIS) announced that DACA recipients could request to renew their deferred action for an additional two years.

In order to further effectuate this program, I hereby direct USCIS to expand DACA as follows:

**Remove the age cap.** DACA will apply to all otherwise eligible immigrants who entered the United States by the requisite adjusted entry date before the age of sixteen (16), regardless of how old they were in June 2012 or are today. The current age restriction excludes those who were older than 31 on the date of announcement (*i.e.*, those who were born before June 15, 1981). That restriction will no longer apply.

**Extend DACA renewal and work authorization to three-years.** The period for which DACA and the accompanying employment authorization is granted will be extended to three-year increments, rather than the current two-year increments. This change shall apply to all first-time applications as well as all applications for renewal effective November 24, 2014. Beginning on that date, USCIS should issue all work

authorization documents valid for three years, including to those individuals who have applied and are awaiting two-year work authorization documents based on the renewal of their DACA grants. USCIS should also consider means to extend those two-year renewals already issued to three years.

**Adjust the date-of-entry requirement.** In order to align the DACA program more closely with the other deferred action authorization outlined below, the eligibility cut-off date by which a DACA applicant must have been in the United States should be adjusted from June 15, 2007 to January 1, 2010.

USCIS should begin accepting applications under the new criteria from applicants no later than ninety (90) days from the date of this announcement.

### B.     Expanding Deferred Action

I hereby direct USCIS to establish a process, similar to DACA, for exercising prosecutorial discretion through the use of deferred action, on a case-by-case basis, to those individuals who:

- have, on the date of this memorandum, a son or daughter who is a U.S. citizen or lawful permanent resident;

- have continuously resided in the United States since before January 1, 2010;

- are physically present in the United States on the date of this memorandum, *and* at the time of making a request for consideration of deferred action with USCIS;

- have no lawful status on the date of this memorandum;

- are not an enforcement priority as reflected in the November 20, 2014 Policies for the Apprehension, Detention and Removal of Undocumented Immigrants Memorandum; and

- present no other factors that, in the exercise of discretion, makes the grant of deferred action inappropriate.

Applicants must file the requisite applications for deferred action pursuant to the new criteria described above. Applicants must also submit biometrics for USCIS to conduct background checks similar to the background check that is required for DACA applicants. Each person who applies for deferred action pursuant to the criteria above shall also be eligible to apply for work authorization for the period of deferred action, pursuant to my authority to grant such authorization reflected in section 274A(h)(3) of

the Immigration and Nationality Act.[4] Deferred action granted pursuant to the program shall be for a period of three years. Applicants will pay the work authorization and biometrics fees, which currently amount to $465. There will be no fee waivers and, like DACA, very limited fee exemptions.

USCIS should begin accepting applications from eligible applicants no later than one hundred and eighty (180) days after the date of this announcement. As with DACA, the above criteria are to be considered for all individuals encountered by U.S. Immigration and Customs Enforcement (ICE), U.S. Customs and Border Protection (CBP), or USCIS, whether or not the individual is already in removal proceedings or subject to a final order of removal. Specifically:

- ICE and CBP are instructed to immediately begin identifying persons in their custody, as well as newly encountered individuals, who meet the above criteria and may thus be eligible for deferred action to prevent the further expenditure of enforcement resources with regard to these individuals.

- ICE is further instructed to review pending removal cases, and seek administrative closure or termination of the cases of individuals identified who meet the above criteria, and to refer such individuals to USCIS for case-by-case determinations. ICE should also establish a process to allow individuals in removal proceedings to identify themselves as candidates for deferred action.

- USCIS is instructed to implement this memorandum consistent with its existing guidance regarding the issuance of notices to appear. The USCIS process shall also be available to individuals subject to final orders of removal who otherwise meet the above criteria.

Under any of the proposals outlined above, immigration officers will be provided with specific eligibility criteria for deferred action, but the ultimate judgment as to whether an immigrant is granted deferred action will be determined on a case-by-case basis.

This memorandum confers no substantive right, immigration status or pathway to citizenship. Only an Act of Congress can confer these rights. It remains within the authority of the Executive Branch, however, to set forth policy for the exercise of prosecutorial discretion and deferred action within the framework of existing law. This memorandum is an exercise of that authority.

---

[4] INA § 274A(h)(3), 8 U.S.C. § 1324a(h)(3) ("As used in this section, the term 'unauthorized alien' means, with respect to the employment of an alien at a particular time, that the alien is not at that time either (A) an alien lawfully admitted for permanent residence, or (B) authorized to be so employed by this chapter or by the[Secretary].") 8 C.F.R. § 274a.12 (regulations establishing classes of aliens eligible for work authorization).



 Official website of the Department of Homeland Security

   

Home    News    In Focus    **Immigration Action**

Share / Email

## News

- Blog
- Data
- Events
- Fact Sheets
- In Focus
  - Acción Ejecutiva sobre Inmigración
  - Beyond the Border
  - Ebola Response
  - **Immigration Action**
  - Unaccompanied Children
- Media Contacts
- Multimedia
- National Terrorism Advisory System
- Press Releases
- Comunicados de Prensa
- Publications
- Social Media
- Speeches
- Testimony

# Fixing Our Broken Immigration System Through Executive Action - Key Facts

(En español)

The President asked Secretary Johnson and Attorney General Eric Holder to undertake a rigorous and inclusive review to inform recommendations on reforming our broken immigration system through executive action. This review sought the advice and input from the men and women charged with implementing the policies, as well as the ideas of a broad range of stakeholders and Members of Congress from both sides of the aisle. Our assessment identified the following ten areas where we, within the confines of the law, could take action to increase border security, focus enforcement resources, and ensure accountability in our immigration system.

## Executive Actions

### Strengthen Border Security

DHS will implement a Southern Border and Approaches Campaign Strategy to fundamentally alter the way in which we marshal resources to the border. This new plan will employ DHS assets in a strategic and coordinated way to provide effective enforcement of our laws and interdict individuals seeking to evade land, sea, and air. To accomplish this, DHS is commissioning three task forces of various law enforcement agencies. The first will focus on the southern maritime border. The second will be responsible for the southern land border and the West Coast. The third will focus on investigations to support the other two task forces. In addition, DHS will continue the surge of resources that effectively reduced the number of unaccompanied children crossing the border illegally this summer. This included additional Border Patrol agents, ICE personnel, criminal investigators, additional monitors, and working with DOJ to reorder dockets in immigration courts, along with reforms in these courts.

- Executive Action: Strengthen Border Security (1.5 MB PDF)

### Revise Removal Priorities

DHS will implement a new department-wide enforcement and removal policy that places top priority on national security threats, convicted felons, gang members, and illegal entrants apprehended at the border; the second-tier priority on those convicted of significant or multiple misdemeanors and those who are not apprehended at the border, but who entered or reentered this country unlawfully after January 1, 2014; and the third priority on those who are non-criminals but who have failed to abide by a final order of removal issued on or after January 1, 2014. Under this revised policy, those who entered illegally prior to January 1, 2014, who never disobeyed a prior order of removal, and were never convicted of a serious offense, will not be priorities for removal. This policy also provides clear guidance on the exercise of prosecutorial discretion.

- Executive Action: Revise Removal Priorities (3.2 MB PDF)

### End Secure Communities and Replace it with New Priority Enforcement Program

DHS will end the Secure Communities program, and replace it with the Priority Enforcement Program (PEP) that will closely and clearly reflect DHS's new top enforcement priorities. The program will continue to rely on fingerprint-based biometric data submitted during bookings by state and local law enforcement agencies and will identify to law enforcement agencies the specific criteria for which we will seek an individual in their custody. The list of largely criminal offenses is taken from Priorities 1 and 2 of our new enforcement priorities. In addition, we will formulate plans to engage state and local governments on enforcement priorities and will enhance Immigration and Customs Enforcement's (ICE) ability to arrest, detain, and remove individuals deemed threats to national security, border security, or public safety.

- Executive Action: End Secure Communities and Replace it with New Priority Enforcement Program (1.5 MB PDF)

### Personnel Reform for ICE Officers

Related to these enforcement and removal reforms, we will support job series realignment and premium ability pay coverage for ICE ERO officers engaged in removal operations. These measures are essential to bringing ICE agents and officers pay in line with other law enforcement personnel.

- Executive Action: Personnel Reform for ICE Officers (1.0 MB PDF)

### Expand Deferred Action for Childhood Arrivals (DACA) Program

We will expand eligibility for DACA to encompass a broader class of children. DACA eligibility was limited to those who were under 31 years of age on June 15, 2012, who entered the U.S. before June 15, 2007, and who were under 16 years old when they entered. DACA eligibility

will be expanded to cover all undocumented immigrants who entered the U.S. before the age of 16, and not just those born after June 15, 1981. We will also adjust the entry date from June 15, 2007 to January 1, 2010. The relief (including work authorization) will now last for three years rather than two.

- Executive Action: Expand Deferred Action for Childhood Arrivals (DACA) Program (2.8 MB PDF)

## Extend Deferred Action to Parents of Americans and Lawful Permanent Residents (DAPA)

DHS will extend eligibility for deferred action to individuals who (i) are not removal priorities under our new policy, (ii) have been in this country at least 5 years, (iii) have children who on the date of this announcement are U.S. citizens or lawful permanent residents, and (iv) present no other factors that would make a grant of deferred action inappropriate. These individuals will be assessed for eligibility for deferred action on a case-by-case basis, and then be permitted to apply for work authorization, provided they pay a fee. Each individual will undergo a thorough background check of all relevant national security and criminal databases, including DHS and FBI databases. With work-authorization, these individuals will pay taxes and contribute to the economy.

- Executive Action: Extend Deferred Action to Parents of U.S. Citizens and Lawful Permanent Residents (2.8 MB PDF)

## Expand Provisional Waivers to Spouses and Children of Lawful Permanent Residents

The provisional waiver program DHS announced in January 2013 for undocumented spouses and children of U.S. citizens will be expanded to include the spouses and children of lawful permanent residents, as well as the adult children of U.S. citizens and lawful permanent residents. At the same time, we will further clarify the "extreme hardship" standard that must be met to obtain the waiver.

- Executive Action: Expand Provisional Waivers to Spouses and Children of Lawful Permanent Residents (1.0 MB PDF)

## Revise Parole Rules

DHS will begin rulemaking to identify the conditions under which talented entrepreneurs should be paroled into the United States, on the ground that their entry would yield a significant public economic benefit. DHS will also support the military and its recruitment efforts by working with the Department of Defense to address the availability of parole-in-place and deferred action to spouses, parents, and children of U.S. citizens or lawful permanent residents who seek to enlist in the U.S. Armed Forces. DHS will also issue guidance to clarify that when anyone is given "advance parole" to leave the country – including those who obtain deferred action - they will not be considered to have departed. Undocumented aliens generally trigger a 3- or 10-year bar to returning to the United States when they depart.

- Executive Action: Revise Parole Rules - Entrepreneurs (2.6 MB PDF)
- Executive Action: Revise Parole Rules - Parole-in-Place and Deferred Action (711 KB PDF)
- Executive Action: Revise Parole Rules - Advance Parole (690 KB)

## Promote the Naturalization Process

To promote access to U.S. citizenship, we will permit the use of credit cards as a payment option for the naturalization fee, and expand citizenship public awareness. It is important to note that the naturalization fee is $680, currently payable only by cash, check or money order. DHS will also explore the feasibility of expanding fee waiver options.

- Executive Action: Promote the Naturalization Process (1 MB PDF)

## Support High-skilled Business and Workers

DHS will take a number of administrative actions to better enable U.S. businesses to hire and retain highly skilled foreign-born workers and strengthen and expand opportunities for students to gain on-the-job training. For example, because our immigration system suffers from extremely long waits for green cards, we will amend current regulations and make other administrative changes to provide needed flexibility to workers with approved employment-based green card petitions.

- Executive Action: Support High-skilled Business and Workers (2.6 MB PDF)

# Additional Information

- The White House: Fixing the System
- U.S. Citizenship and Immigration Services: Immigration Action | En español
- U.S. Immigration and Customs Enforcement: Immigration Action

*Last Published Date: December 5, 2014*