# Exhibit "C"

Secretary
U.S. Department of Homeland Security
Washington, DC 20528


Homeland Security

November 20, 2014

MEMORANDUM FOR:   Thomas S. Winkowski
Acting Director
U.S. Immigration and Customs Enforcement

R. Gil Kerlikowske
Commissioner
U.S. Customs and Border Protection

Leon Rodriguez
Director
U.S. Citizenship and Immigration Services

Alan D. Bersin
Acting Assistant Secretary for Policy

FROM:   Jeh Charles Johnson
Secretary

SUBJECT:   **Policies for the Apprehension, Detention and Removal of Undocumented Immigrants**

This memorandum reflects new policies for the apprehension, detention, and removal of aliens in this country. This memorandum should be considered Department-wide guidance, applicable to the activities of U.S. Immigration and Customs Enforcement (ICE), U.S. Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS). This memorandum should inform enforcement and removal activity, detention decisions, budget requests and execution, and strategic planning.

In general, our enforcement and removal policies should continue to prioritize threats to national security, public safety, and border security. The intent of this new policy is to provide clearer and more effective guidance in the pursuit of those priorities. To promote public confidence in our enforcement activities, I am also directing herein greater transparency in the annual reporting of our removal statistics, to include data that tracks the priorities outlined below.

The Department of Homeland Security (DHS) and its immigration components-CBP, ICE, and USCIS-are responsible for enforcing the nation's immigration laws. Due to limited resources, DHS and its Components cannot respond to all immigration violations or remove all persons illegally in the United States. As is true of virtually every other law enforcement agency, DHS must exercise prosecutorial discretion in the enforcement of the law. And, in the exercise of that discretion, DHS can and should develop smart enforcement priorities, and ensure that use of its limited resources is devoted to the pursuit of those priorities. DHS's enforcement priorities are, have been, and will continue to be national security, border security, and public safety. DHS personnel are directed to prioritize the use of enforcement personnel, detention space, and removal assets accordingly.

In the immigration context, prosecutorial discretion should apply not only to the decision to issue, serve, file, or cancel a Notice to Appear, but also to a broad range of other discretionary enforcement decisions, including deciding: whom to stop, question, and arrest; whom to detain or release; whether to settle, dismiss, appeal, or join in a motion on a case; and whether to grant deferred action, parole, or a stay of removal instead of pursuing removal in a case. While DHS may exercise prosecutorial discretion at any stage of an enforcement proceeding, it is generally preferable to exercise such discretion as early in the case or proceeding as possible in order to preserve government resources that would otherwise be expended in pursuing enforcement and removal of higher priority cases. Thus, DHS personnel are expected to exercise discretion and pursue these priorities at all stages of the enforcement process-from the earliest investigative stage to enforcing final orders of removal-subject to their chains of command and to the particular responsibilities and authorities applicable to their specific position.

Except as noted below, the following memoranda are hereby rescinded and superseded: John Morton, *Civil Immigration Enforcement: Priorities for the Apprehension, Detention, and Removal of Aliens*, March 2, 2011; John Morton, *Exercising Prosecutorial Discretion Consistent with the Civil Enforcement Priorities of the Agency for the Apprehension, Detention and Removal of Aliens*, June 17, 2011; Peter Vincent, *Case-by-Case Review of Incoming and Certain Pending Cases*, November 17, 2011; *Civil Immigration Enforcement: Guidance on the Use of Detainers in the Federal, State, Local, and Tribal Criminal Justice Systems*, December 21, 2012; *National Fugitive Operations Program: Priorities, Goals, and Expectations*, December 8, 2009.

A.  **Civil Immigration Enforcement Priorities**

The following shall constitute the Department's civil immigration enforcement priorities:

**Priority 1 (threats to national security, border security, and public safety)**

Aliens described in this priority represent the highest priority to which enforcement resources should be directed:

(a) aliens engaged in or suspected of terrorism or espionage, or who otherwise pose a danger to national security;

(b) aliens apprehended at the border or ports of entry while attempting to unlawfully enter the United States;

(c) aliens convicted of an offense for which an element was active participation in a criminal street gang, as defined in 18 U.S.C. § 521(a), or aliens not younger than 16 years of age who intentionally participated in an organized criminal gang to further the illegal activity of the gang;

(d) aliens convicted of an offense classified as a felony in the convicting jurisdiction, other than a state or local offense for which an essential element was the alien's immigration status; and

(e) aliens convicted of an "aggravated felony," as that term is defined in section 101(a)(43) of the *Immigration and Nationality Act* at the time of the conviction.

The removal of these aliens must be prioritized unless they qualify for asylum or another form of relief under our laws, or unless, in the judgment of an ICE Field Office Director, CBP Sector Chief or CBP Director of Field Operations, there are compelling and exceptional factors that clearly indicate the alien is not a threat to national security, border security, or public safety and should not therefore be an enforcement priority.

**Priority 2 (misdemeanants and new immigration violators)**

Aliens described in this priority, who are also not described in Priority 1, represent the second-highest priority for apprehension and removal. Resources should be dedicated accordingly to the removal of the following:

(a) aliens convicted of three or more misdemeanor offenses, other than minor traffic offenses or state or local offenses for which an essential element

3

was the alien's immigration status, provided the offenses arise out of three separate incidents;

(b) aliens convicted of a "significant misdemeanor," which for these purposes is an offense of domestic violence;[1] sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or driving under the influence; or if not an offense listed above, one for which the individual was sentenced to time in custody of 90 days or more (the sentence must involve time to be served in custody, and does not include a suspended sentence);

(c) aliens apprehended anywhere in the United States after unlawfully entering or re-entering the United States and who cannot establish to the satisfaction of an immigration officer that they have been physically present in the United States continuously since January 1, 2014; and

(d) aliens who, in the judgment of an ICE Field Office Director, USCIS District Director, or USCIS Service Center Director, have significantly abused the visa or visa waiver programs.

These aliens should be removed unless they qualify for asylum or another form of relief under our laws or, unless, in the judgment of an ICE Field Office Director, CBP Sector Chief, CBP Director of Field Operations, USCIS District Director, or users Service Center Director, there are factors indicating the alien is not a threat to national security, border security, or public safety, and should not therefore be an enforcement priority.

**Priority 3 (other immigration violations)**

Priority 3 aliens are those who have been issued a final order of removal[2] on or after January 1, 2014. Aliens described in this priority, who are not also described in Priority 1 or 2, represent the third and lowest priority for apprehension and removal. Resources should be dedicated accordingly to aliens in this priority. Priority 3 aliens should generally be removed unless they qualify for asylum or another form of relief under our laws or, unless, in the judgment of an immigration officer, the alien is not a threat to the integrity of the immigration system or there are factors suggesting the alien should not be an enforcement priority.

---

[1] In evaluating whether the offense is a significant misdemeanor involving „domestic violence," careful consideration should be given to whether the convicted alien was also the victim of domestic violence; if so, this should be a mitigating factor. See generally, John Morton, *Prosecutorial Discretion: Certain Victims, Witnesses, and Plaintiffs*, June 17, 2011.

[2] For present purposes, "final order" is defined as it is in 8 C.F.R. § 1241.1.

### B. Apprehension, Detention, and Removal of Other Aliens Unlawfully in the United States

Nothing in this memorandum should be construed to prohibit or discourage the apprehension, detention, or removal of aliens unlawfully in the United States who are not identified as priorities herein. However, resources should be dedicated, to the greatest degree possible, to the removal of aliens described in the priorities set forth above, commensurate with the level of prioritization identified. Immigration officers and attorneys may pursue removal of an alien not identified as a priority herein, provided, in the judgment of an ICE Field Office Director, removing such an alien would serve an important federal interest.

### C. Detention

As a general rule, DHS detention resources should be used to support the enforcement priorities noted above or for aliens subject to mandatory detention by law. Absent extraordinary circumstances or the requirement of mandatory detention, field office directors should not expend detention resources on aliens who are known to be suffering from serious physical or mental illness, who are disabled, elderly, pregnant, or nursing, who demonstrate that they are primary caretakers of children or an infirm person, or whose detention is otherwise not in the public interest. To detain aliens in those categories who are not subject to mandatory detention, DHS officers or special agents must obtain approval from the ICE Field Office Director. If an alien falls within the above categories and is subject to mandatory detention, field office directors are encouraged to contact their local Office of Chief Counsel for guidance.

### D. Exercising Prosecutorial Discretion

Section A, above, requires DHS personnel to exercise discretion based on individual circumstances. As noted above, aliens in Priority 1 must be prioritized for removal unless they qualify for asylum or other form of relief under our laws, or _unless_, in the judgment of an ICE Field Office Director, CBP Sector Chief, or CBP Director of Field Operations, there are compelling and exceptional factors that clearly indicate the alien is not a threat to national security, border security, or public safety and should not therefore be an enforcement priority. Likewise, aliens in Priority 2 should be removed unless they qualify for asylum or other forms of relief under our laws, or _unless_, in the judgment of an ICE Field Office Director, CBP Sector Chief, CBP Director of Field Operations, USCIS District Director, or USCIS Service Center Director, there are factors indicating the alien is not a threat to national security, border security, or public safety and should not therefore be an enforcement priority. Similarly, aliens in Priority 3 should generally be removed unless they qualify for asylum or another form of relief under our laws or, _unless_, in the judgment of an immigration officer, the alien is not a threat to the

integrity of the immigration system or there are factors suggesting the alien should not be an enforcement priority.

In making such judgments, DHS personnel should consider factors such as: extenuating circumstances involving the offense of conviction; extended length of time since the offense of conviction; length of time in the United States; military service; family or community ties in the United States; status as a victim, witness or plaintiff in civil or criminal proceedings; or compelling humanitarian factors such as poor health, age, pregnancy, a young child, or a seriously ill relative. These factors are not intended to be dispositive nor is this list intended to be exhaustive. Decisions should be based on the totality of the circumstances.

### E.   Implementation

The revised guidance shall be effective on January 5, 2015. Implementing training and guidance will be provided to the workforce prior to the effective date. The revised guidance in this memorandum applies only to aliens encountered or apprehended on or after the effective date, and aliens detained, in removal proceedings, or subject to removal orders who have not been removed from the United States as of the effective date. Nothing in this guidance is intended to modify USCIS Notice to Appear policies, which remain in force and effect to the extent they are not inconsistent with this memorandum.

### F.   Data

By this memorandum I am directing the Office of Immigration Statistics to create the capability to collect, maintain, and report to the Secretary data reflecting the numbers of those apprehended, removed, returned, or otherwise repatriated by any component of DHS and to report that data in accordance with the priorities set forth above. I direct CBP, ICE, and USCIS to cooperate in this effort. I intend for this data to be part of the package of data released by DHS to the public annually.

### G.   No Private Right Statement

These guidelines and priorities are not intended to, do not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter.