IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

        Plaintiff,                              Criminal No. 14-0180

    v.                                       ELECTRONICALLY FILED

ELIONARDO JUAREZ-ESCOBAR,

        Defendant.

**DEFENDANT'S NOTICE AND SUPPORTING BRIEF AS TO DECISION TO PROCEED PURSUANT TO THE COURT'S DECEMBER 16, 2014 ORDER**

    Elionardo Juarez-Escobar is a 42 year old native and citizen of Honduras. His wife and three children are also natives and citizens of Honduras and live there. Mr. Juarez-Escobar had first come, or attempted to come, to the United States in 2005 but was apprehended at the border. He was subjected to expedited removal (INA 235) and removed on December 5, 2005. For several years, he lived peacefully without persecution, threats to his life or freedom, or fear of torture, but remained in poverty in Honduras. In order to provide a better life for his family, he headed back to the United States. This time he entered successfully, but without documents, approximately in 2010. He came to western Pennsylvania because his brother, a U.S. citizen, and his mother, a permanent resident, live in the area. He obtained work and sent a part of his earnings back to his family in Honduras, as he remains the sole support for his wife and children.

    His arrest in Beaver County on April 7, 2014 for Driving Under the Influence of Alcohol and other charges was the first time in Mr. Juarez-Escobar's life that he had been arrested. As the Court points out, if he had been in a different part of the United States, the criminal charges against him in Beaver County would have been resolved and he would have resumed his life but

ultimately USICE was informed of his arrest and the instant proceedings were commenced. To quote the Court's opinion at page 27:

> "Accordingly, defendant's current criminal prosecution and the civil deportation hearing that will undoubtedly follow as a result of this criminal proceeding, arguably are arbitrary and random."

Mr. Juarez-Escobar had been granted bond by the Beaver County court, but was taken into custody pursuant to an ICE detainer on July 22, 2014 and is being held in the Allegheny County Jail. On November 20, 2014, President Obama announced that he would take Executive Action in regard to certain immigration matters and regarding certain immigrants. The executive action program announced is known as "Immigration Accountability Executive Action" or IAEA.

Through IAEA, the President exercised his Executive authority in an effort to address long festering immigration issues in regard to border protection, prosecutorial discretion and legal immigration. It is the broad scope of IAEA's prosecutorial discretion which could have an effect on Mr. Juarez-Escobar, a non-citizen of the United States. Accordingly, the Court did not ignore IAEA, but recognizing that removal is a "drastic measure" found at page 26:

> "In light of the impact of this court's criminal proceedings may have on the civil proceedings (of removal) and given the Supreme Court's own view on the inextricability between the two proceedings, the Government's argument does not convince this Court that is should ignore the November 20, 2014 Executive Action merely because the President's speech and the Department's Memoranda reference 'civil' proceedings ."

In its order of December 16, 2014, the Court directs the defendant to provide notice to the Court as to how to proceed in light of the Executive Action relating to prosecutorial discretion. IAEA provides for prosecutorial discretion in the form of Deferred Action for Childhood Arrivals (DACA) and for parents of U.S. citizen or permanent resident children,

Deferred Action for Parent Accountability, or "DAPA". Although potentially providing relief for millions of undocumented immigrants, neither of these apply to Mr. Juarez-Escobar. He is not a childhood arrival. He has no U.S. citizen or U.S. permanent resident children.

IAEA provides for prosecutorial discretion in reprioritizing ICE's removal activities, focusing on "felons not families." Under this new policy announced by the Department of Homeland Security (DHS) Secretary Johnson on November 20th, effective January 5, 2015, prosecution of Mr. Juarez-Escobar would not be a priority. But the United States of America has already initiated these proceedings and Mr. Juarez-Escobar has entered a plea of guilty that the Court would allow him to seek to withdraw.

The court order of December 16, 2014 identifies 3 alternatives from which to choose:

a. Seek to withdraw his guilty plea in light of the Executive Action

b. Continue to sentencing on or before January 22, 2015, to time-served (approximately six (6) months imprisonment (the high end of the guideline range)) – with one year of supervised release to be served in the United States, so that he may pursue his rights (if any) pursuant to the Executive Action, or otherwise; or

c. Continue to sentencing on or before January 22, 2015, to time-served, with suspended supervised release, and with instruction to the United States Marshal Service to deliver Defendant to ICE.

Mr. Juarez-Escobar wants to be able to work, needs to be able to work in order to support his family. He would like to do this as soon as possible. He is willing to forego fighting to stay in the U.S. if it means protracted detention, with limited chance of success. To achieve the goal of being free to support his family, he needs to be free from incarceration or detention and to be authorized for employment. The most certain and expeditious way to achieve these goals is option "C". That would achieve closure of the criminal matter, but leave the immigration issues to be resolved before an immigration judge.

Once Mr. Juarez-Escobar is in ICE custody, he would be then transferred to another detention facility. ICE has the discretion to immediately commence or to delay Removal proceedings. With the goal of supporting his family in mind, a delay in the Removal proceedings would be devastating to Mr. Juarez-Escobar and his family. Once the Removal proceedings are assigned to and begin before an Immigration Judge, the Immigration Judge could grant his release on bond, but could not grant employment authorization.

In Removal proceedings, Mr. Juarez-Escobar could apply for statutory relief, if he were eligible. Ultimately, he does not appear to be eligible. He is not eligible for Cancellation of Removal (INA 240a) because he has not been in the U.S. the required 10 years. Based on current conditions in his homeland, as he understands them, he doesn't have a well-founded fear of persecution, nor is it "more likely than not" that he would undergo torture upon return to Honduras. Neither Asylum, Withholding of Removal nor relief under the Convention Against Torture would be available to him under these circumstances.

Mr. Juarez-Escobar has U.S. citizen or permanent resident relatives who could file for him to secure permanent residence. His brother is a U.S. citizen and can file a family based 4th preference visa for him as the sibling of a U.S. citizen. His mother, a permanent resident, would be able to file a family based visa for him when and if she becomes a U.S. citizen. Unfortunately, family based 4th preference has a priority date of March 22, 2002 for January 2015, so a visa would not be available for more than a decade. Moreover, when the priority date did become current, he would need a waiver of inadmissibility to secure permanent residency. Although the waiver process is addressed in IAEA, it would not realistically be available to Mr. Juarez-Escobar until long in the future.

As a practical matter, Mr. Juarez-Escobar is without statutory relief from removal. Of course, USICE could exercise prosecutorial discretion and grant him deferred action unrelated to DACA or DAPA. With that discretionary grant, he would then be eligible for employment authorization. IAEA gives prospective guidelines and priorities for immigration enforcement and removal. To date, there is no indication that prosecutorial discretion would be applied retroactively to a non-priority immigrant. As a practical matter, this administrative largess is highly unlikely at this time. Moreover, neither the DACA nor DAPA benefits of IAEA, assuming they are Constitutional and would be implemented as anticipated would be available to Mr. Juarez-Escobar.

Without a realistic opportunity to be released from custody or to be granted employment authorization, his goal is best accomplished by permitting ICE to remove him as soon as practicable after the January 22, 2015 sentencing.

This choice, however, is based on the assumption that the government will proceed with Mr. Juarez-Escobar's removal immediately after the January 22, 2015 sentencing. If the U.S. government appeals this court's order, thereby prolonging Mr. Juarez-Escobar's confinement, he reserves the right to choose option "A" or "B". If the government appeals, Mr. Juarez-Escobar will ask this court to revive the bond proceedings so that he can at least seek release, notwithstanding an ICE detainer and seek whatever discretionary or statutory relief that may be available to him.

    Respectfully submitted,

    /s/ Alonzo Burney
    Alonzo Burney, Esq.
    502 5th Avenue, Suite 301
    McKeesport, PA 15132
    412 664 7707 (Office)

aburneysr@comcast.net

Robert S. Whitehill, Esq.
Fox Rothschild LLP
625 Liberty Avenue, 29th Floor
Pittsburgh, PA 15222
412 394 5595 (Office)
rwhitehill@foxrothschild.com